1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| THE ESTATE OF JAVIER GARCIA GAONA, JR., JAVIER GARCIA GAONA, and YOLANDA GARCIA, individually and as successors in interest to THE ESTATE OF JAVIER GARCIA GAONA, JR. | Case No. CV 17-01983-AB (AJWx) **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

11
12
13
14                    Plaintiffs,
15
       v.
16
       THE CITY OF SANTA MARIA, THE
17     SANTA MARIA POLICE
       DEPARTMENT, ERNIE SALINAS,
18     GABRIEL ALVAREZ, WILL
       JACKSON, MATT HOLTON,
19     RAFAEL TORRES, and DOES 1-25,
       inclusive,
20
                      Defendants.
21
22
23
24
25
26
27
28

1    **I.    INTRODUCTION**

2          Pending before the Court is Defendants'[1] Motion for Summary Judgment.

3    (Dkt. No. 34 ("Mot.").)  For the reasons set forth below, the Court **GRANTS**

4    Defendants' Motion for Summary Judgment.

5    **II.    BACKGROUND**

6          **A.    Factual Background[2]**

7          The facts in this case are tragic.  SMPD Officers responded to 911 calls

8    regarding a suspicious person looking into a bank with a large knife.  (Dkt. No. 37-1

9    ("SSUF") ¶ 1.)  The Officers made contact with a subject who matched the

10   description, decedent Javier Garcia Gaona, Jr. ("decedent Gaona").  (SSUF ¶ 2.)

11   Decedent Gaona had a large knife, and refused to drop the knife in compliance with

12   the Officers' orders.  (SSUF ¶ 2.)  Decedent Gaona moved across the street and

13   positioned himself in front of a gas station marquee.  (SSUF ¶ 3; Plaintiffs' Video

14   Recordings, Exs. 1–2; Defendants' Video Recording, Ex. 2 (collectively, with

15   Plaintiffs' Video Recordings, Exs. 1–2, "Video Recordings").)  Decedent Gaona held

16   the knife to his throat.  (SSUF ¶ 3; Video Recordings.)  After some time, decedent

17   Gaona was stepping side to side and looking right and left.  (Video Recordings.)  The

18   Officers then fired "bean-bag" rounds at decedent Gaona, pursuant to Sergeant

19   Mengel's command.  (Video Recordings; SSUF ¶ 6.)  Decedent Gaona eventually fell

20   ────────────────

21   [1] Defendants in this case are the City of Santa Maria; the Santa Maria Police
     Department ("SMPD"); Officers Ernie Salinas, Gabriel Alvarez, Will Jackson, Matt

22   Holton, and Rafael Torres ("Officers") (collectively, "Defendants").  (*See* Dkt. No. 1
     ("Compl.") ¶¶ 5–6.)  Plaintiffs in this case are Javier Garcia Gaona and Yolanda

23   Garcia, decedent Javier Garcia Gaona, Jr.'s parents, who bring this action on behalf of
     themselves individually and as the successors in interest of the Estate of Javier Garcia

24   Gaona, Jr.  (Compl. ¶ 4.)

25

26   [2] The Court's description of the factual background of this case does not constitute
     this Court's findings of undisputed facts for purposes of this Motion.

27

28

to the ground, got up off the ground, began jumping up and moving the knife toward his stomach and moving it across his neck, as if he was stabbing himself in the stomach and slicing his throat.  (Video Recordings.)  Decedent Gaona then ran toward the Officers with the knife in his hand.  (Video Recordings.)  The Officers fired at decedent Gaona, and he collapsed on the street.  (SSUF ¶ 8.)

The entire incident from when the Officers first encountered decedent Gaona until the time the Officers shot decedent Gaona was approximately 40 minutes. (SSUF ¶ 4.)

After securing the knife, and handcuffing decedent Gaona, the Officers commenced CPR and first aid.  (SSUF ¶ 9.)  Decedent Gaona was transferred to the hospital where he was pronounced dead.  (*See* Mot. at 4.[3])

**B.    Procedural History**

Plaintiffs filed their Complaint in this Court on March 13, 2017.  (Compl.)  In their Complaint, Plaintiffs assert five causes of action:  (1) Unlawful Seizure and Excessive Force (42 U.S.C. § 1983) under the Fourth and Fourteenth Amendments; (2) Municipal Liability for Unconstitutional Custom, Practice or Policy, Failure to Train, and Supervisory Liability (*Monell*); (3) Battery; (4) Negligence; and (5) Violation of the Bane Act (California Civil Code § 52.1).  (Compl.)

Defendants filed their Motion for Summary Judgment on June 6, 2018.  (Mot.) Plaintiffs opposed on June 22, 2018.  (Opp'n.)  Defendants replied on June 27, 2018. (Dkt. No. 37 ("Reply").)  The Court held a hearing on July 13, 2018, and provided the parties with a Tentative Order.

---

[3] Defendants do not include a factual citation to support that decedent Gaona was transferred to the hospital where he was pronounced dead.  (Mot. at 4.)  However, it does not appear that this fact is in dispute (*see* Dkt. No. 36 ("Opp'n")), and regardless, the location and time of when decedent Gaona was pronounced dead is not a material factual issue in this case.

1    **III.    LEGAL STANDARD**

2         Summary judgment is appropriate when, after adequate discovery, the evidence

3    demonstrates that there is no genuine issue as to any material fact, and the moving

4    party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The moving party

5    bears the initial burden of establishing the absence of a genuine issue of material fact.

6    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Once the moving party has

7    met its burden, the non-moving party must "do more than simply show that there is

8    some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v.*

9    *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the non-moving party must go

10   beyond the pleadings and identify specific facts that show a genuine issue for trial.  *Id.*

11   at 587.  "[T]he mere existence of *some* alleged factual dispute between the parties will

12   not defeat an otherwise properly supported motion for summary judgment; the

13   requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty*

14   *Lobby Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  A disputed fact is

15   material when its resolution might affect the outcome of the suit under the governing

16   law.  *Id.* at 248.  An issue is genuine if the evidence is sufficient for a reasonable jury

17   to return a verdict for the non-moving party.  *Id.*  A genuine issue of material fact

18   must be more than a scintilla of evidence, or evidence that is merely colorable or not

19   significantly probative.  *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

20        A court may consider the pleadings, discovery, and disclosure materials, as well

21   as any affidavits on file.  Fed. R. Civ. P. 56(c)(2).  Where the moving party's version

22   of events differs from the non-moving party's version, a court must view the facts and

23   draw reasonable inferences in the light most favorable to the non-moving party.  *Scott*

24   *v. Harris*, 550 U.S. 372, 378 (2007).  When a videotape is provided in cases such as

25   this, the court should "view[] the facts in the light depicted by the videotape."  *Id.* at

26   381.

27        Although a court may rely on materials in the record that neither party cited, it

28   need only consider cited materials.  Fed. R. Civ. P. 56(c)(3).  Therefore, a court may

1  properly rely on the non-moving party to identify specifically the evidence that

2  precludes summary judgment.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

3  Finally, the evidence presented by the parties must be admissible.  Fed. R. Civ.

4  P. 56(e).  Conclusory or speculative testimony in affidavits and moving papers is

5  insufficient to raise a genuine issue of fact and defeat summary judgment.  *Thornhill's*

6  *Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Conversely, a genuine

7  dispute over a material fact exists if there is sufficient evidence supporting the claimed

8  factual dispute, requiring a judge or jury to resolve the differing versions of the truth.

9  *Anderson*, 477 U.S. at 253.

10  **IV.   DISCUSSION**

11  Defendants argue that they are entitled to summary judgment as a matter of law

12  for the following reasons:  (1) the Officers' use of force was objectively reasonable;

13  (2) Plaintiffs fail to meet the heightened standard for their Fourteenth Amendment

14  claims; (3) the Officers are entitled to qualified immunity; (4) there are no *Monell* or

15  vicarious liability claims against the City; (5) Plaintiffs' pendent state law claims fail

16  in the absence of a constitutional violation; and (6) Plaintiffs fail to state a claim under

17  California Civil Code § 52.1 (Bane Act claim).  (Mot.)[4]

18  **A.   Federal Claims**

19  Because the Court ultimately finds that the Officers are entitled to qualified

20  immunity, the Court focuses its discussion on this issue, as it resolves the Federal

21  Claims in this case.

22  "Under our precedents, officers are entitled to qualified immunity under § 1983

23  unless (1) they violated a federal statutory or constitutional right, and (2) the

24

25

26

27

---

[4] The Court admonishes Defendants for their seemingly unsuccessful attempts to cut and paste certain sections of their Motion from prior work product.  For example, Defendants refer to the City of Rialto as a Defendant, as opposed to the City of Santa Maria, and Defendants reference a First Amended Complaint, when there is only one original Complaint in this action.  (*See, e.g.*, Mot. at 18.)

28

unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 598 (2018).  Courts have discretion to address the prongs in any order in light of the circumstances of each case.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  "Although 'this Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam).  "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks omitted).

The plaintiff bears the burden of showing that the rights allegedly violated were clearly established by controlling precedent.  *Sharp v. Orange Cty.*, 871 F.3d 901, 911, 919 (9th Cir. 2017).  In order to show a right is clearly established, the plaintiff need not produce "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate," such that "every reasonable official" would have understood that the particular conduct at issue was unlawful. *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).  That is, the "[p]laintiff[] must point to prior case law that articulates a constitutional rule specific enough to alert these [officers] in this case that their particular conduct was unlawful." *Sharp*, 871 F.3d at 911 (emphasis omitted); *White*, 137 S. Ct. at 552 (emphasizing that clearly established law must be particularized to the facts of the case and "not defined a high level of generality").  "[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Kisela*, 138 S. Ct. at 1152 (internal quotation marks omitted).  "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id.* at 1153.

6.

"Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers." *Id.* (internal quotation marks omitted). "But general rules set forth in "*Garner and Graham* do not by themselves create clearly established law outside an obvious case." *Id.* (internal quotation marks omitted). "Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness." *Id.* "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable officer in defendant's shoes would have understood that he was violating it.'" *Id.*

In this case, Plaintiffs argue that the Officers' use of excessive force began with the firing of the "bean-bag" rounds and culminated in the shooting of decedent Gaona, and that such excessive force violated the decedent's Fourth Amendment rights and Plaintiffs' Fourteenth Amendment rights by depriving Plaintiffs of their familial relationship with their son. (*See* Compl. ¶¶ 18, 20.) Viewing the undisputed facts in the light most favorable to the Plaintiffs, and in the light depicted by the video tape, decedent Gaona had a large knife in his hands, which he refused to drop in response to orders from uniformed officers. *See Scott*, 550 U.S. at 378, 381; (SSUF ¶ 2). Decedent Gaona positioned himself in front of a gas station marquee while still holding the large knife. (SSUF ¶ 3.) As shown in the video, decedent Gaona, while still holding the knife, stepped side to side and looked right and left. (Video Recordings.) The Officers then fired "bean-bag" rounds at decedent Gaona, pursuant to Sergeant Mengel's command. (Video Recordings.) Decedent Gaona eventually fell to the ground, got up off the ground, and ran toward the Officers with the knife in his hand. (Video Recordings.) The Officers fired at decedent Gaona, and he collapsed on the street. (SSUF ¶ 8.)

Defendants argue that the Officers are entitled to qualified immunity here because "Plaintiffs cannot cite a single case in which an officer dealing with a similar

7.

1   situation has been found to have violated the Constitution." (Mot. at 15–16.) In

2   response, Plaintiffs cite *Deorle v. Rutherford*, 272 F.3d 1272, 1285 (9th Cir. 2001), to

3   support their argument that Defendants violated a clearly established right. (Opp'n at

4   17.) Plaintiffs quote the following passage from *Deorle* to support their argument:

5       Every police officer should know that it is objectively unreasonable to
        shoot—even with lead shot wrapped in cloth case—an unarmed man
6       who: has committed no serious offense, is mentally or emotionally
        disturbed, has been given no warning of the imminent use of such a
7       significant degree of force, poses no flight risk, and presents no
        objectively reasonable threat to the safety of the officer or other
8       individuals.

9   (Opp'n at 17 (quoting *Deorle*, 272 F.3d at 1285).)

10          Notably, the Supreme Court, in its recent decision of *Kisela*, stated that it has

11  instructed the Ninth Circuit "not to read its decision in that case [(*Deorle*)] too broadly

12  in deciding whether a new set of facts is governed by clearly established law." 138 S.

13  Ct. at 1154 (citing *City of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775–77

14  (2015)). The Court explained that "*Deorle* involved a police officer who shot an

15  unarmed man in the face, without warning, even though the officer had a clear line of

16  retreat; there were no bystanders nearby; the man had been 'physically compliant and

17  generally followed all the officers' instructions'; and he had been under police

18  observation for roughly 40 minutes." *Id.* Similar to the facts in *Kisela*, "[i]n this case,

19  by contrast, [decedent Gaona] was armed with a large knife . . . [and] ignored the

20  officers' orders to drop the weapon." *See Id.*; (SSUF ¶¶ 2–3; Video Recordings).

21  "Whatever the merits of the decision in *Deorle*, the differences between that case and

22  the case before us leap from the page." *Id.* (quoting *Sheehan*, 135 S. Ct. at 1776).

23  Thus, the Court finds that Plaintiffs have not met their burden of demonstrating that

24  the rights allegedly violated were clearly established by controlling precedent. *See*

25  *Sharp*, 871 F.3d at 911, 919.

26          During the hearing, Plaintiffs focused their argument on *Glenn v. Washington*

27  *County*, 673 F.3d 864 (9th Cir. 2011). Plaintiffs did not discuss *Glenn* in the section

28

                                              8.

of their argument in their Opposition focused on qualified immunity, and instead focused on *Deorle*, as discussed above.  (*See* Opp'n at 15–18.)  Regardless, when reviewing *Glenn*, *Glenn* does not establish that the Officers violated a clearly established right in this case.

In *Glenn*, the Ninth Circuit concluded that the district court erred in granting the motion for summary judgment in favor of the defendants on the basis of qualified immunity because "genuine issues of fact remain."  673 F.3d at 870.  The Court's analysis was not focused on the clearly established right prong, but was instead focused on the first prong addressing whether the officers' conduct violated a constitutional right.  *Id.* at 870.  The Court stated that it expresses "no opinion as to the second part of the qualified immunity analysis"—the clearly established right prong—and the Court remanded "that issue to the district court for resolution after the material factual disputes have been determined by the jury."  *Id.*  The Court in *Glenn* did not conclude that the Officers' use of the beanbag gun was unreasonable as a matter of law, such that the use of the beanbag gun in *Glenn* was unconstitutional.  *Id.* at 870, 872.  Instead, the Ninth Circuit concluded that there were disputed issues of fact as to whether the use of the beanbag gun was unreasonable.  *Id.* ("On the facts presented here, viewed favorably to the plaintiff, the officers' use of force was not *undisputably* reasonable.") (emphasis added).  Unlike the district court in *Glenn*, this Court does not hold that the Officers' use of the beanbag gun was reasonable or unreasonable, that is not the prong of the qualified immunity analysis that this Court addresses.  Instead, the Court concludes that Plaintiffs have not met their burden of establishing that the Officers violated a clearly established right, and *Glenn* does not answer that question.

"No matter how carefully a reasonable officer read *Graham, Deorle*, and [*Glenn*] beforehand, that officer could not know that" firing the beanbag rounds at decedent Gaona or firing shots at decedent Gaona when he ran at them with a knife would violate decedent Gaona's rights.  *Sheehan*, 135 S. Ct. at 1777.  "[N]o precedent

clearly established that that" the Officers' actions here violated decedent Gaona's rights. *See id.* at 1777. Plaintiffs' focus during oral argument on the reasonableness of the use of the beanbag gun is beside the point, as the Court's analysis is focused on whether the purported "unlawfulness of [the Officers'] conduct was 'clearly established at the time.'" *Wesby*, 138 S. Ct. at 598.

Because the Court finds that the Officers are entitled to qualified immunity, the Court **GRANTS** summary judgment in favor of the Officers as to Plaintiffs' claim for unlawful seizure and excessive force. Because the Court concludes the Officers did not use excessive force or engage in an unlawful seizure as a matter of law, there is no basis for *Monell* liability against the City. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officers, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original); (*see also* Opp'n at 18 ("Defendants frame their argument as a truism . . . [']Because the individual officers are entitled to qualified immunity, the City of [Santa Maria] is also entitled to dismissal of federal claims as a matter of law.' . . . Plaintiffs would obviously agree with this platitude. If the officers are entitled to qualified immunity . . . there can be no *Monell* liability against the [C]ity of Santa Maria.")).

**B.    State Law Claims**

Because the Court grants summary judgment in favor of Defendants as to the federal claims, the remaining state law claims are dismissed as no federal jurisdiction remains. (28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction"); *Bryant v. Adventist Health Sys/W.*, 289 F.3d 1162, 1165, 1169–70 (9th Cir. 2002) (affirming the district court's decision to exercise its discretion to dismiss supplemental state law claims without prejudice after the court granted summary judgment on the federal claims).

**V.      CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiffs' federal claims, and **DISMISSES without prejudice** the remaining state law claims for lack of jurisdiction.

Defendants shall lodge a Proposed Judgment within 14 days of the date of this Order.

The Pretrial Conference and Jury Trial dates are vacated.

**IT IS SO ORDERED.**

Dated:  July 17, 2018

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

11.